**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ARIES BULK A/S, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** _____ |
| **v.** | ) | |
| | ) | |
| **M/V PANOCEANIS, her engines, rigging,** | ) | |
| **tackle, appurtenances, and apparel,** *in rem*, | ) | |
| | ) | **In Admiralty** |
| **Defendant.** | ) | |

## VERIFIED COMPLAINT OF ARIES BULK A/S

The Verified Complaint of Plaintiff, Aries Bulk A/S (hereinafter "Aries") against the M/V

PANOCEANIS, IMO No. 9460320, her engines, rigging, tackle, appurtenances, and apparel, *in*

*rem*, for breach of a maritime contract respectfully represents as follows:

### I.  JURISDICTION

1.      This is an admiralty and maritime claim within the meaning of 28 U.S.C. § 1333,

and Rule 9(h) of the Federal Rules of Civil Procedure.

### II.  PARTIES

2.      Aries is a foreign public limited liability company that transports dry bulk materials

and is organized and existing pursuant to the laws of Denmark with its principal place of business

in Copenhagen.

3.      The vessel, M/V PANOCEANIS, is now or soon will be afloat in the navigable

waters of the United States and within the jurisdiction of this Honorable Court at the Alabama

State Docks located at Alabama State Docks Boulevard, Pier D1 South, Mobile, AL 36602.

### III. **FACTS**

4.      By a one-time charter trip by way of a recap incorporating an amended NYPE form and rider clauses dated 7 August 2025, Aries (or, the "Charterer") entered into a charterparty with Panoceanis Maritime Inc. (hereinafter, "Owner"), as owner of the M/V PANOCEANIS (or, the "Vessel") for one laden leg with lawful harmless coal from Colombia to Poland (hereinafter, the "Charterparty").  A true and correct copy of said Charterparty is attached hereto as Exhibit 1 and is fully incorporated herein by this reference.

5.      Pursuant to the terms of the Charterparty, Owner warranted the M/V PANOCEANIS to be "tight, staunch, strong and in everyway fitted for ordinary cargo service" and agreed to "maintain vessel's class and keep her in a thoroughly efficient state in hull, machinery and equipment for and during the service." Furthermore, Clause 23 of the Charterparty incorporated the Carriage of Goods by Sea Act 1924 and/or Hague Rules and/or Hague-Visby Rules, which provide that:

Article III

1. The carrier shall be bound before and at the beginning of the voyage to exercise due diligence to:

   (a) Make the ship seaworthy.

   (b) Properly man, equip and supply the ship.

6.      At the material time, the Vessel was sub-chartered to Sub-Charterer, Excomin, pursuant to a charterparty dated 1 August 2025 (the "Sub-Charterparty") for the carriage of a cargo of metallurgical coal for loading at Colombia and discharge at Poland. The terms of the Sub-Charterparty were materially the same as the Charterparty, and Charterer had specifically chartered in the Vessel for the performance of the Sub-Charterparty.

2

7.    The laycan, or agreed timeframe for the Vessel to arrive at the loading port pursuant to the Charterparty, was between 15 to 18 August 2025.

8.    On or around 18 August 2025, when the Vessel was proceeding to the delivery port, Charterer received an email from Owner advising that the Vessel, upon departure from her previous port, suffered damage to her equipment in that a water jacket broke and therefore the Vessel had to return to Cristobal, Panama for repairs and that it would take approximately 2 days to do so. Subsequently on 19 August 2025, Charterer received from the Master of the Vessel a main engine damage report in respect of the cooling jacket of the main engine damage.

9.    Between 21 and 26 August 2025, Aries received various email updates from Owner regarding repairs to the M/V PANOCEANIS, and the Owner purported to tender three Notices of Readiness. True and correct copies of the email updates are attached hereto as Exhibit 2, and the three Notices of Readiness are attached hereto as Exhibit 3.

10.    Neither the 1st, 2nd, nor 3rd Notice of Readiness (together, "the NORs") were effective or valid, because the Vessel was not physically ready. At the material time, the Vessel was unable to follow Charterer's employment instructions and was suffering, and continued to suffer, a catastrophic mechanical breakdown of her main engine. At no time was the Vessel fit for service or seaworthy such that the NORs could be validly tendered.

11.    It is clear that, at the material time when the NORs were purportedly tendered, the Vessel was not physically ready to be delivered into service pursuant to the Charterparty, and the NORs purportedly tendered were invalid and not given in good faith. The Vessel had suffered main engine damage on her way to Barranquilla, Colombia (the delivery port) and she had to turn around to Cristobal, Panama for repairs. It is also evident from the Vessel's own timesheet from the Master dated 27 August 2025 that the main engine was not repaired effectively or at all,

resulting in a main engine "explosion" and subsequent damage to the No. 1 cylinder. A true and correct copy of the Vessel's timesheet is attached hereto as Exhibit 4.

12.   In order for a Vessel to be ready, she must be prepared in such a way that she is able to commence cargo operations without delay and to comply with Charterer's orders whenever they are given. M/V PANOCEANIS was unable to comply with orders to proceed to berth for loading given the breakdown in her main engine and the No. 1 cylinder. Owner breached lines 41 to 43 of the Charterparty in that the Vessel was not in every way fitted for the service. Owner further breached Article III, Rule 1, Carriage of Goods by Sea Act 1924 and/or Hague Rules and/or Hague-Visby Rules in failing to exercise due diligence before and at the beginning of the voyage to ensure that the Vessel was seaworthy.

13.   By Owner's own admission:

   a.   M/V PANOCEANIS had suffered damage and/or was unseaworthy before she purported to tender her NORs;

   b.   There was delay to the Vessel due to filter issues arising from the fuel oil cloggage; and,

   c.   A few minutes following the Pilot being on board the Vessel there was an issue with the main engine due to an exhaust valve problem of the No. 1 cylinder.

14.   By the undisputed evidence and its own admission, Owner breached the Charterparty. *See Exhibit 2*. Accordingly, Charterer was entitled to and did cancel the Charterparty without prejudice to its claim for damages.

15.   As a result of Owner's breach of the Charterparty, Aries suffered a loss of profit on the Sub-Charterparty in the sum of $213,448.87 and also paid the Proforma Disbursement Account ("PDA") for Barranquilla, Columbia in the sum of $21,138.25. Following Owner's breach of the Charterparty, which resulted in Aries being unable to perform the Sub-Charterparty, Sub-Charterer

submitted a loss and damage claim against Aries in the sum of $609,000.00, for which Aries is entitled and seeks full indemnity against Owner.

16.     Aries has incurred reasonable attorneys' fees, collection costs, and expenses, and will sustain future attorneys' fees, collection costs, and expenses, all in amounts not presently ascertainable.  Plaintiff will amend its pleadings to allege the proper amounts when they become known.

17.     Aries's claims against Owner are currently being adjudicated at arbitration proceedings under the London Maritime Arbitrators Association ("LMAA").

18.     Under U.S. law, a charterer is entitled to a maritime lien against a vessel, *in rem*, for the owner's breach of a time charter on the New York Produce Exchange form, to obtain security in support of the arbitration proceedings.  *See Navieros Inter-Americanos, S.A. v. M/V VASILIA EXPRESS,* 120 F.3d 304, 314 (1st Cir. 1997); *E.A.S.T., Inc. v. M/V ALAIA,* 876 F.2d 1168, 1176 (5th Cir. 1989); *Rainbow Line, Inc. v. M/V TEQUILA,* 480 F.2d 1024, 1027 (2d Cir. 1973).

19.     Accordingly, Aries is entitled to arrest of the M/V PANOCEANIS, her engines, rigging, tackle, appurtenances, and apparel, *in rem,* to obtain security for the LMAA proceedings.

WHEREFORE, Aries prays:

A.  That process in due form of law pursuant to this Court's admiralty and maritime jurisdiction issue against the M/V PANOCEANIS, her rigging, tackle, apparel, furniture, engines, bunkers, and all other necessaries thereunto appertaining and belonging, and that all persons claiming any interest in the Vessel be cited to appear and answer this Verified *in rem* Complaint;

B.  That the Contract and outstanding balance due thereunder be declared to be a valid and subsisting lien in the sum of $843,587.12 principal, unpaid accrued interest at

the rate of 6% per annum, together with all other amounts which are required to be disbursed by Aries for the care, insuring, preservation, storage and mooring of the Defendant Vessel, and all other advances, expenses, attorneys' fees, costs, and disbursements by Aries, together with post-judgment interest at the maximum statutory rate;

C.  That the M/V PANOCEANIS, her rigging, tackle, apparel, furniture, engines, bunkers, and all other necessaries thereunto appertaining and belonging be condemned and sold to pay the demands and claims of Aries, with interest and costs, and that Aries may become a purchaser permitted to credit the purchase price against any amounts judged to be owing at any sale of the subject property;

D.  That it be decreed that any and all persons, firms, or corporations claiming any interest in the M/V PANOCEANIS are forever barred and foreclosed of and from all rights, claim of, in, or to the Defendant Vessel and every part thereof;

E.  That Aries have such other and further relief and justice to which it may be entitled.

MAYNARD NEXSEN PC

*/s/ Jaime W. Betbeze*
Jaime W. Betbeze
11 North Water Street, Suite 24290
Mobile, Alabama 36602
Phone: 251-432-0001
Fax:    251-432-0007
*jbetbeze@maynardnexsen.com*
**Attorney for Plaintiff Aries Bulk A/S**

**VERIFICATION**

STATE OF ALABAMA

COUNTY OF MOBILE

Jaime Betbeze, being duly sworn, deposes and says:

I am counsel for Plaintiff in the above-titled action. I have read the foregoing Complaint and note the contents thereof and, based upon my review of the records, the same are true to the best of my knowledge, information, and belief. I am fully authorized to make this verification on behalf of Aries Bulk A/S. I am making this verification on behalf of Aries Bulk A/S because it is a foreign corporation having no officers in this District to make this verification on its behalf.

Jaime W. Betbeze

Subscribed and sworn to
before me on this 10th day
of July 2026.

Tierney Monaghan
NOTARY PUBLIC
State of Alabama
County of Mobile
My commission expires:
11/05/2029

> TIERNEY MONAGHAN
> Notary Public
> Alabama State at Large

7

207395433.v2